# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| ANGELA WISE, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civil Action |
| ) | No. 11-0864-CV-W-JCE-SSA |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| Defendant. ) | |

## ORDER

This case involves the appeal of a final decision of the Secretary denying plaintiff's application for disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401 et seq. Pursuant to 42 U.S.C. § 405(g), this Court may review the final decisions of the Secretary. Pending before the Court at this time are plaintiff's brief, defendant's reply brief in support of the administrative decision, and plaintiff's reply. For the reasons stated herein, the Secretary's decision will be affirmed.

Standard of Review

Judicial review of disability determination is limited to whether there is substantial evidence in the record as a whole to support the Secretary's decision. 42 U.S.C. § 405(g); e.g., Rappoport v. Sullivan, 942 F.2d 1320, 1322 (8th Cir. 1991). Substantial evidence is "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). Thus, if it is possible to draw two inconsistent positions from the evidence and one position represents the Agency's findings, the Court must affirm the decision. Robinson v.

Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).

In hearings arising out of an application for benefits, the claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. §§ 423(d)(1). Wiseman v. Sullivan, 905 F.2d 1153, 1156 (8th Cir. 1990). In order to meet this burden, the claimant must show a medically determinable physical or mental impairment that will last for at least twelve months, an inability to engage in substantial gainful activity, and that this inability results from the impairment. Id. A disabling impairment is one which precludes engaging "in any substantial gainful activity [for at least twelve months] by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A finding of "not disabled" will be made if a claimant does not "have any impairment or combination of impairments which significantly limit [the claimant's] physical or mental ability to do basic work activities. . . ." 20 C.F.R. § 404.1520.

The standard by which the ALJ must examine the plaintiff's subjective complaints of pain is well-settled. The ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as the claimant's daily activities, the duration and frequency of pain, precipitating and aggravating factors, dosage and effects of medication, and functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

## Discussion

Plaintiff was 38 years old on the alleged onset date. She has a high school education, and past relevant work as a billing clerk, deli clerk, cleaner, and fast food worker. She alleges disability due to bipolar disorder, which she alleges causes mood swings, concentration problems, depression, and difficulty sleeping.

The ALJ found that plaintiff had not engaged in substantial gainful activity since October 7, 2008, the alleged onset date. It was his finding that plaintiff had the severe impairment of a personality disorder. The ALJ concluded that she did not have an impairment or combination of impairments that met or equaled a listed impairment. It was also the ALJ's finding that plaintiff was partially credible. He found that she was unable to perform her past relevant work, but that she could perform a full range of work at all exertional levels, with certain non-exertional limitations. It was his finding that plaintiff had "a marked limitation on her ability to understand and remember very short and simple instructions (for purposes of this decision a marked limitation is defined as the ability to function in this area is seriously limited, but not precluded); [and] she has a marked limitation on her ability to maintain attention and concentration for extended periods of time." [Tr. 19]. Additionally, he found that plaintiff had "a moderate limit on her ability to remember locations and work-like procedures (for purposes of this decision a moderate limitation is defined as the ability to function in this area is limited, but satisfactory); she has a moderate limitation on her ability to work in coordination with or proximity to others without being distracted by them; she has a moderate limitation on her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; she has a moderate limitation on her ability to interact appropriately with the general public; she has moderate limitation on her ability to accept instructions and respond appropriately to criticism from supervisors; and she has a moderate limitation on her ability to respond appropriately to changes in the work setting." [Id.]. Therefore, the ALJ found that plaintiff was not under a disability as defined by the Act.

The ALJ relied on the opinion of a vocational expert, who reviewed plaintiff's work

history and the limitations the ALJ found credible. According to the testimony of the vocational expert, there were representative jobs plaintiff could perform, such as order filler, retail marker, and electronics sub-assembler.

At the hearing before the ALJ, plaintiff testified that she lives in a house with her husband, and a son and daughter. She testified that she did not believe she could return to work because she is uncomfortable around people, and gets "nervous and anxious." [Tr. 36]. She has lost jobs due to emotional problems. For example, when her last boss confronted her, she felt cornered and lashed out at him. She further explained that her boss wanted her to come into the office to talk and she refused because she thought the discussion was going to be about her taking too much time off from work. She stated that she lost her last job on October 7, 2008, because of this, due to her depression and anxiety. It was her testimony that she doesn't have good concentration, has poor short-term memory, is depressed, and gets upset being around people. She stated that her problems began at age 16 or 17. She receives counseling and takes medication for her emotional problems. Since her alleged onset date, October, 2008, she has had no control over her emotional problems. She gets "[a]ngry at the slightest thing." [Tr. 38]. Panic or anxiety attacks come over her when she is upset or in an unfamiliar situation. This happens about three times a week. She has paranoid thoughts and crying spells. The latter occur about five times a week. She has confusion about four times a week. Plaintiff also testified that she has migraines about four times a week. She cannot concentrate long enough to pay the household bills or maintain a schedule. Her energy level is down, and she experiences dry mouth from her medication. She wakes frequently, even though she takes sleeping pills. It was her testimony that she takes a short nap after lunch. She gets dressed to take her son to school, but will change into night clothes when she gets home. Sometimes, she doesn't take care of personal hygiene. Her ability to shop for

groceries has changed because she doesn't like to be in crowded places; she also does not do household chores very often because of depression or anxiety. She does not have a social life outside of her house and family. Plaintiff testified that she walks her 4th grade son to school because he has Asperger Syndrome. Otherwise, she only visits her parents with her children. She watches some television and tries to read, but can't concentrate long enough to read a page. Plaintiff did state that her medications help somewhat and that counseling helps. She drives when she has to, her husband or daughter usually cook, she does do some grocery shopping with her daughter if her husband can't do it, and she managed most of the family finances from 1988 until 2007.

The ALJ called a medical expert, Dr. Alfred Jonas, a psychiatrist, who reviewed plaintiff's medical records. He reviewed plaintiff's current medications, which include Seroquel, Trazodone, Lithium Carbonate, Carbamazepine, Paroxetine, and Pomerin. The doctor ruled out bipolar disorder as a firm diagnosis, because it was his conclusion that there were inconsistent indicators and no agreement among the treating doctors. He stated that there was probably an underlying personality disorder that might have led to some of her interpersonal conflicts. He agreed that she had some underlying instability, unsteady moods, or rapidly changing moods, "but not equal to bipolar disorder per se." [Tr. 54]. He noted that the only examples in the record of plaintiff's difficulties included her confrontation with her boss and some ongoing marital problems. The expert agreed with the ALJ that plaintiff had mild to moderate problems with activities of daily living. He also agreed that she had some impairment in social functioning with an increase in dependency, which was probably moderate to marked. In terms of concentration, persistence and pace, the expert found some significant discrepancy in the record. He noted that Dr. Mossinghoff indicated on one mental state examination sheet that plaintiff's concentration

and attention were normal; on an RFC-type form, the doctor indicated that concentration, persistence and pace were moderate or even marked. The expert opined that in this area, plaintiff probably had mild impairments, "taking into account all of the indicators within the record." [Tr. 60]. He would not conclude that the ending of her last job was an episode of deterioration in a functional setting. He felt that it was not clear that she did not have the emotional or mental capacity to do the job. In terms of her ability to perform another job, he did not feel that she would decompensate if she were exposed to the demands of a job. He opined that it was her choice not to return to work at her last job, and noted that she had quit another job because she did not like working nights. The expert also opined that the record did not support a finding that plaintiff had marked limitations in areas such as ability to travel or use public transportation; getting along with coworkers without distracting them; or exhibiting behavioral extremes.

Plaintiff contends that the ALJ erred in not finding that her bipolar disorder was a severe disorder at step two; erred in the RFC finding; erred in not properly weighing the opinion of her treating psychiatrist; and erred in his credibility analysis. In her reply brief, she reasserts these arguments.

Turning first to plaintiff's contention that the ALJ erred in not finding that her bipolar disorder was a severe impairment, plaintiff maintains that the ALJ could not adequately provide sufficient limitations for a bipolar disorder when he had concluded that she only had a personality disorder. It is asserted that she was diagnosed with, treated and suffered from "some form of bipolar disorder" as concluded by three different doctors who examined her. Plaintiff contends that it was error for the ALJ to rely on the opinion of the medical expert, who stated that he could not confirm a diagnosis of a bipolar disorder because the record was inconsistent and unclear. She asserts that the ALJ erred by relying on this opinion without adequately explaining how the

record did not support a finding that her bipolar disorder is a severe impairment.

It is defendant's position that the mental limitations that are supported in the record were included in the RFC, and that the ALJ adequately provided sufficient limitations in the RFC to account for a bipolar disorder. It is contended that the ALJ adequately considered plaintiff's difficulty with concentration, depression, anxiety and decreased energy under the personality disorder. Defendant submits that the ALJ agreed that plaintiff had psychological limitations due to personality disorder, and that he evaluated each of her complaints, recounted all of her treatment notes, including that she had been diagnosed with bipolar disorder and that she complained of depression and anxiety, in assessing her mental impairment. "Since the ALJ agreed that Plaintiff's personality disorder caused sufficient mental limitations to progress past step two, as a practical matter Plaintiff must also show that bipolar disorder caused additional mental limitations not already contemplated by the ALJ as apart of the personality disorder impairment." [Defendant's Brief, 8].

The ALJ found that plaintiff did not meet or medically equal a listed impairment 12.08. It was his finding, after a review of the opinions of Dr. Jonas , Dr. Breckenridge, the state agency examiner, and Dr. Mossinghoff, that plaintiff had not establish that she had a disabling mental condition. He found, as delineated above, that she had a personality disorder, and that she had the RFC to perform a full range of work at all exertional levels with two areas of marked limitation: Understanding and remembering simple instructions, and maintaining attention and concentration. He also found that she had moderate limitations on several mental abilities. The ALJ stated that the RFC took into consideration her personality disorder.

A review of the medical evidence indicates that plaintiff received treatment in 2008 for depression and anxiety. She complained of mood swings, anxiety, depression, and irritability.

The treating psychiatrist, Dr. Tahir Rahman, assessed the depression and anxiety, and diagnosed her with bipolar mood disorder, rapid cycling, type II. He prescribed various medications, to include Xanax, Depakote, Tegretol, Risperdal, and Abilify. Plaintiff reported some relief from behavior like anger outbursts and sleeping problems, but also noted that she remained easily irritable. The doctor's notations indicate that she complained frequently of low energy, but those notations do not mention that she suffered from manic spells. Additionally, the records indicate that plaintiff was having marital problems, preparing for a hysterectomy, and dealing with her husband's alcoholism, including an arrest for driving while intoxicated. There is no medical source statement in the record from this physician. The ALJ reviewed plaintiff's history of treatment with Dr. Rahman. He found that, despite an alleged long-standing history of mental impairments, she only began receiving therapy from him in September of 2008, and that her "treatment has been relatively routine, infrequent, and conservative." [Tr. 21].

The record also contains a psychological evaluation by Dr. Breckenridge in August of 2009. Plaintiff complained to him about mood swings, crying spells, irritability, isolation and trouble concentrating. Dr. Breckenridge found her to be at least moderately depressed. He found that she demonstrated low self-esteem and mild anger at times. He noted that she had never been hospitalized for psychiatric treatment, and that she had just started outpatient counseling. During his examination, plaintiff was cooperative and pleasant, with good eye contact, well-oriented, and had logical thinking. He did note problems with concentration during mental control exercises, and that she seemed to have some diminished memory. Dr. Breckenridge opined that plaintiff did not meet the standards necessary for a diagnosis of Bipolar I or II because of "no manic episodes or major depression." Tr. 322. He found that she had a mood disorder, and that she appeared capable of following simple instructions, although she had problems with

concentration and persistence. The ALJ gave this opinion some weight in evaluating plaintiff's complaints, finding that it was "somewhat consistent with the totality of the evidence." [Tr. 11].

Plaintiff also received treatment from Dr. Mossinghoff, who saw her about six times, and issued several medical source statements. Dr. Mossinghoff provided an opinion on Listing 12.04 and Listing 12.06; an assessment of plaintiff's ability to do work-related activities; and a physician's source statement. In terms of Listing 12.04, Affective Disorders, she stated that she could not assess whether plaintiff met the listing 12.04C because she had only seen her since March 31, 2010, which was only about three months. She indicated that plaintiff did meet 12.04A and did not meet 12.04B. The doctor also indicated that plaintiff only had a marked limitation in maintaining social functioning. This form was dated July 19, 2010. On the same date, the doctor opined that plaintiff did meet 12.06A and B, Anxiety Related Disorders, but did not meet 12.06A and C. She found that plaintiff had a marked limitation in both maintaining social functioning and in maintaining concentration, persistence or pace. In her assessment of plaintiff's ability to do work-related activities, she noted that she had scheduled patient for visits every 2-3 weeks from March 31, 2010 through June 28, 2010, and that the type of treatment she was providing was "medication monitoring." [Tr. 349]. This form had the same date on it. The doctor opined on the work-related activities form that plaintiff had a moderate impairment in her ability to maintain concentration, persistence and pace. There is no indication from the doctor's notes that show that she was providing any kind of therapy or any other type of treatment. The ALJ gave little weight to this doctor's opinions, finding that they were inconsistent with each other and with her treatment notes.

It is clear from reviewing the medical records as a whole, including the testimony of the medical expert at the hearing, that plaintiff's mental condition was diagnosed by physicians in

various ways, including, but not limited to, a mood disorder, bipolar disorder, and depression. A careful review of the record indicates that plaintiff has failed to demonstrate that the ALJ excluded consideration of any of her complaints. The ALJ found that plaintiff suffered from personality disorder, which included all the complaints that she also attributed to bipolar disorder. He accepted that she had wide-ranging limitations arising from personality disorder, and that the RFC included limitations in the same areas she attributed to bipolar disorder, including concentration and social functioning. It should be noted that plaintiff has failed to identify any complaint or symptom that could have or should have been considered as being indicative of bipolar disorder, which was not included in the ALJ's careful review of the record. The Court finds, therefore, that there was substantial evidence in the record as a whole to support the ALJ's decision at step two.

Regarding the ALJ's credibility determination, the ALJ must consider the subjective aspects of plaintiff's complaints pursuant to the agency's regulations, 20 C.F.R. §§ 404.1529 and 416.929, and with the framework set forth in Polaski. As long as the ALJ examines the Polaski factors and cites inconsistencies between plaintiff's subjective complaints and the record as a whole, the ALJ's credibility determination is entitled to deference. Goff v. Barnhart, 421 F.3d 785, 791-92 (8th Cir. 2005).

Plaintiff contends that the ALJ erred in his credibility analysis by not properly evaluating the difficulties she had in performing even minor household chores, and that he erred in assuming because she could accomplish some daily activities some of the time, she would be able to engage in a normal range of activities. Additionally, she argues that the ALJ unfairly faulted her for infrequent or conservative treatment, when she did receive treatment and medication during the relevant time period. She also asserts that the ALJ unfairly viewed her work history.

The Court has carefully reviewed the ALJ's credibility findings, and finds that there is substantial evidence in the record as a whole to support the credibility finding. The ALJ considered the Polaski factors, assessing plaintiff's credibility based on the record as a whole. The ALJ considered the medical records during the relevant time period, her statements, her subjective complaints, and functional limitations. He found her only partially credible because her daily activities suggested that she had the mental capacity to care for her child, drive, prepare meals, and perform some household tasks. He also noted that she had a work history that was sporadic and reflected poor earnings, although her work history beginning in 2003 reflected more consistent work activity, "which bolsters her credibility but also detracts from her alleged difficulty interacting with others." [Tr. 22]. He also noted that she had not sought treatment in a manner that is indicative of a person who is psychologically disabled. He found that despite her allegedly long-standing history of mental impairments, her treatment had been fairly routine and conservative. He also observed that she reported some improvement with medication and counseling. The ALJ relied on plaintiff's function reports in finding that her daily activities were inconsistent with a wholly disabling condition. The Court has carefully reviewed the ALJ's credibility determination, and finds that there is substantial evidence in the record as a whole to support his decision. The record indicates that the ALJ's credibility determination was sufficient, and is entitled to deference.

Turning to the weight given to the opinion of the treating physician, while a treating physician's opinions are ordinarily to be given substantial weight, they must be supported by medically acceptable clinical or diagnostic data, and must be consistent with substantial evidence in the record. Haggard v. Apfel, 175 F.3d 591, 595 (8th Cir. 1999); Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004). The ALJ may reject the opinion of any medical expert if it is

inconsistent with the medical record as a whole.  See Bentley v. Shalala, 52 F.3d 784, 787 (8th Cir. 1995).  In Prosch v. Apfel, 201 F.3d 1010 (8th Cir. 2000), the Eighth Circuit Court of Appeals discussed the weight to be given to the opinions of treating physicians, holding that the opinion of a treating physician is accorded special deference under the Social Security regulations.  The Court has, however, upheld an ALJ's decision to discount or even disregard the opinion of a treating physician where other medical assessments "are supported by better or more thorough medical evidence,"Rogers v. Chater, 118 F.3d 600, 602 (8th Cir. 1997), or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.  Cruze v. Chater, 85 F.3d 1320, 1324-25 (8th Cir. 1996).

In terms of the weight given to the opinion of Dr. Mossinghoff, plaintiff asserts that the ALJ improperly discounted her opinion.  It is defendant's contention that Dr. Mossinghoff's opinion was inconsistent, both in terms of how she rated plaintiff's limitations, and inconsistent with her own treatment notes. It is also asserted that the doctor did not have a long-standing relationship with plaintiff, which she recognized.  Additionally, it is contended that the ALJ improperly relied on Dr. Jonas's opinion regarding the treatment records and opinions of Dr. Mossinghoff.  The Court has carefully reviewed the doctor's records, and finds that there is substantial evidence in the record to support the ALJ's decision to give little weight to the opinion of Dr. Mossinghoff.   The ALJ stated that, "[a]fter a review of the entire record, the undersigned gives Dr. Mossinghoff's opinion little weight due to the short duration of her treating relationship with the claimant and the internal inconsistency of her medical source statements." [Tr. 21].  The Court finds that the ALJ did not err in affording only slight weight to the opinion of Dr. Mossinghoff, and adequately stated his reasons for doing so.  It is clear from reviewing Dr. Mossinghoff's opinions that there were inconsistencies, which detract from the credibility of that

doctor's opinions. Additionally, the fact that the ALJ called a medical expert at the hearing, who reviewed all the medical records and opinions, supports his decision in terms of how he weighed the opinions in the record.  It is the finding of the Court that there is substantial evidence in the record as a whole to support the ALJ's decision to afford slight weight to the opinion of Dr. Mossinghoff.

Plaintiff also contends that the ALJ erred in his RFC finding by not considering all of her impairments and not providing accurate limitations in the RFC.

The Eighth Circuit has recognized that the RFC finding is a determination based upon all the record evidence, not just "medical" evidence. See Pearsall v. Massanari, 274 F.3d 1211, 1217-18 (8th Cir. 2001); Dykes v. Apfel, 223 F.3d 865, 866-67 (8th Cir.2000) (citing 20 C.F.R. § 404.1545; SSR 96-8p at pp. 8-9).  Although it is a medical question, the RFC findings are not based only on "medical" evidence, i.e., evidence from medical reports or sources. Rather, an ALJ has the duty, at step four, to formulate the RFC based on all the relevant, credible evidence of record. See  McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000) (the Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations).

A review of the record indicates that the ALJ relied on the record as a whole in rendering his RFC decision, including medical evidence from various sources, and plaintiff's testimony. The ALJ also called a medical expert, a psychiatrist, to review all of plaintiff's medical records. Additionally, he relied on the testimony of a vocational expert.   He found, in reliance on that testimony, that there were jobs plaintiff could perform.  It is apparent that the ALJ thoroughly reviewed the record, and took into account plaintiff's mental impairments in restricting the RFC.

The Commissioner's regulations state that it is the claimant's responsibility to provide medical evidence to show that he or she is disabled. See 20 C.F.R. §§ 404.1512, 416.912 (2008); Roth v. Shalala, 45 F.3d 279, 282 (8th Cir.1995). Plaintiff had the burden to come forward with relevant evidence of her restrictions. In this case, the Court finds that there is substantial evidence to support the ALJ's decision regarding plaintiff's RFC. The ALJ properly considered all the evidence of record in analyzing plaintiff's credibility, which the Court has previously found to be a proper credibility assessment. He then properly considered all of the evidence of plaintiff's restrictions found to be credible in determining his RFC. The record indicates that the ALJ noted and considered all of plaintiff's mental impairments, severe and non-severe, in assessing her RFC. The Court has carefully reviewed the record, and finds that there is substantial evidence in the record as a whole to support the ALJ's RFC finding.

Based on the foregoing, the Court finds that there is substantial evidence in the record to support the ALJ's decision that plaintiff did not suffer from a disabling mental impairment and that she was not disabled under the Act. Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir. 2006). Accordingly, the decision of the Secretary should be affirmed.

It is hereby

ORDERED that the decision of the Secretary should be, and it is hereby, affirmed.

/s/ James C. England
JAMES C. ENGLAND
United States Magistrate Judge

Date: August 2, 2012